IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| A.C. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION FILE NO.: |
| | : | |
| v. | : | |
| | : | |
| IMPERIAL INVESTMENTS DORAVILLE, | : | |
| Inc. d/b/a Clarion Hotel f/k/a | : | |
| Comfort Inn | : | |
| | : | |
| Defendant. | : | |

# COMPLAINT

Matthew B. Stoddard
Robert F. Noens
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
robert@legalhelpga.com

**Attorneys for Plaintiff**

1

## INTRODUCTION

1.      From approximately May 13, 1994 until present, the Clarion Hotel located at 2001 Clearview Ave, Doraville, GA 30340 (the "Clarion") has been owned and operated by Defendant Imperial Investments Doraville.

2.      From approximately 2011 through the end of July 2012, A.C. – a fifteen-year-old girl – was repeatedly raped and trafficked for sex at the Clarion.

## PROCEDURAL ISSUES

3.      Given the nature of the case, A.C. is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed her name to defense counsel or will immediately upon identification of defense counsel.  When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for Plaintiff to proceed anonymously.  Upon information and belief, Defendant will consent to Plaintiff proceeding without publicly disclosing their names.

4.      Defendant can be served through its registered agent Marcy Smythe at 330 Research Court, Suite 200, Peachtree Corners, GA 30092.

5.      Defendant was properly served with process in this matter.

6.      Defendant is subject to the jurisdiction and venue of this Court.

7. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act which is a law of the United States.

8. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Dekalb County Georgia which is within the Northern District of Georgia's Atlanta Division. *See* 28 U.S.C. § 1391.

## A.C. IS TRAFFICKED FOR SEX AT THE HOTEL

9. A.C.'s mother sold her for methamphetamine to a forty-something-year-old meth dealer named Paul Gregory Hearn, Jr. a/k/a Crash.

10. Hearn forced A.C. to take methamphetamines and other drugs. Hearn told A.C. that Hearn was her boyfriend.

11. In 2011 and 2012, when A.C. was fifteen years old, Hearn took A.C. to the Clarion Hotel.

12. Hearn knew Defendant's staff.

13. A.C. stayed at the Clarion Hotel for weeks at a time during 2011 and 2012 in rooms rented by Hearn.

14. While at the Clarion Hotel, Hearn told A.C. that she would be working as a prostitute, that he was her pimp, and that he would receive the money for the sex work.

15. Hearn beat A.C.

16. Hearn caused A.C. to fear for her life.

17. Hearn continually sold A.C. as a sex slave to buyers at the Clarion Hotel.

18. Hearn raped A.C. at the Clarion Hotel.

19. A.C. was sexually assaulted numerous of times while at the hotel by various "Johns."

20. Hearn took the commercial sex act proceeds.

21. For the duration of the stays, Hearn used a portion of the proceeds from the commercial sex acts to book lodging at the hotel for the next night.

22. Hearn would pay Defendant's staff extra money to rent rooms to Hearn that were isolated and not near the other guests. Defendant's staff complied.

23. Non-party Anna told Defendant's staff that A.C. had been beaten up by Hearn, but Defendant's staff told Anna to "mind her own business." Room rentals continued. Police were not called.

24. On approximately July 26, 2012, police arrested Hearn at the Clarion Hotel.

25. Hearn was charged with (i) statutory rape, (ii) aggravated child molestation – first count, (iii) aggravated child molestation – second count, (iv) contributing to the delinquency of a minor, (v) sexual exploitation of a child, and (vi) possession of methamphetamine.

26. On May 14, 2013, and as part of a plea deal, Hearn pled guilty to (i) statutory rape, (ii) aggravated child molestation, (iii) contributing to the delinquency of a minor, (iv) sexual exploitation of children, and (v) possession of methamphetamine. In exchange, the State "nol prosed" the remaining aggravated child molestation charge.

27. Hearn is serving twenty-five years in prison.

28. Defendant has not faced accountability.

**ALLEGATIONS IN LEGAL TERMS**

29. Plaintiff was forced (through coercion, violence, and threats of violence) to have sex with men in exchange for money in rooms at the hotel that her respective traffickers rented from Defendant.

30. The trafficker(s) took the money from the sex acts and used it to re-rent hotel rooms from Defendant, and then those trafficker(s) again forced (through

coercion, violence, and threats of violence) the Plaintiff to have sex with men in exchange for money in the hotel rooms.

31. Defendant's staff and agents observed the following signs and symptoms of trafficking for Plaintiff / victim:

    a.    malnourishment, poor hygiene, fatigue, sleep deprivation, bruising, cuts, and other physical injuries

    b.    lack of freedom of movement and constant monitoring by older men

    c.    no control over or possession of money

    d.    "uniforms" for each trafficking victim such as very high heels and cheaply made dresses that cover very little of a person's body

    e.    constant and excessive requests for towels and sheets to housekeeping

    f.    prohibition of some staff members to enter the hotel rooms

    g.    constant dirty sheets and towels with excessive bodily fluid and blood on them found in the rooms and many more towels and sheets that one person would use

    h.    large numbers of used condoms and some sex toys in the rooms

    i.    rooms rented daily by the same trafficker who would frequently pay with cash

    j.    a trafficker renting multiple rooms over and over again

    k.    extended stays by the victims without those victims having personal possession's other than their "uniforms"

l.   a constant stream of male visitors entering the room one at a time, staying a short period, and then leaving, and

m.   victims and traffickers being steered to certain areas of the property and only given rooms in its "prostitution wing."

## COUNT 1: TVPRA CLAIMS

32.   Defendant "knowingly benefited" from Plaintiff's trafficking because:

a.   the traffickers rented rooms at the hotel;

b.   the traffickers used the hotel WIFI network;

c.   Defendant collected revenue from the room rentals and the use of the WIFI network; and

d.   the victim was advertised for sex through the WIFI network and forced to have sex in the rooms.

33.   Defendant took part in a common undertaking involving risk or profit with the traffickers because:

a.   Plaintiff's traffickers would pay in cash for one night at a time, booking the next night's stay before check-out time;

b.   Defendant directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;

d.   Defendant was directly renting rooms to the same traffickers – Plaintiff's traffickers;

e.   Defendant had commercial dealings with Plaintiff's traffickers and then continued to rent rooms to Plaintiff's traffickers.

f.  Defendant had a continuous business relationship with Plaintiff's traffickers such that Defendant established a pattern of conduct with those traffickers.

g.  After renting the room for the first night, Plaintiff's traffickers had prior commercial dealings with Defendant and then reinstated those dealings.

h.  Defendant associated with Plaintiff's traffickers in an effort to force Plaintiffs to serve Defendant's business objectives.

i.  Defendant owned, operated, and maintained the hotel in question.

34.  Plaintiff's traffickers' undertaking with Defendant violated the TVPRA with respect to Plaintiff because:

a.  the traffickers recruited the Plaintiff to participate in commercial sex acts at Defendant's hotel by, among other reasons, stating that they would take care of the Plaintiff and then making Plaintiff work as prostitutes;

b.  the traffickers harbored the Plaintiff at Defendant's hotel for the purpose of Plaintiff's participating in commercial sex acts at the property;

c.  the traffickers transported the Plaintiff to Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

d.  the traffickers-maintained Plaintiff at Defendant's hotel for the purpose of Plaintiff's participating in commercial sex acts at the hotel;

e.  The commercial sex acts occurred at Defendant's hotel in rooms rented by the traffickers;

f. the traffickers used force, threats of force, fraud, and coercion to cause Plaintiff to participate in commercial sex acts at Defendant's hotel;

g. the traffickers threatened the Plaintiff with violence and used this tactic to cause Plaintiff to engage in commercial sex acts at Defendant's hotel;

h. the traffickers de-frauded Plaintiff by falsely telling Plaintiff that they would take care of Plaintiff, and then forcing Plaintiff to work as a prostitute for them at Defendant's hotel;

i. the traffickers coerced the Plaintiff to participate in commercial sex acts at Defendant's property by threatening Plaintiff with physical harm and sharing of lewd photographs with family if the Plaintiff did not engage in commercial sex acts at Defendant's hotel;

j. the traffickers knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited the Plaintiff to engage in commercial sex acts in the hotel rooms that the traffickers rented from Defendant;

k. Buyers came to Defendant's hotel, purchased the "right" to have sex with Plaintiff from the traffickers, and then the buyers raped the Plaintiff at Defendant's hotel;

l. Both Hearns and Leonard were aware or should have been aware that A.C. was not yet eighteen years of age but nevertheless sold her for commercial sex at Defendant's hotel;

m. the traffickers utilized Defendant's wireless internet connection to post advertisements of Plaintiff for the commercial sex acts; and

n. Other actions to be proven at trial.

35. The venture in which Defendant participated affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of credit cards to post online advertisements through websites for selling Plaintiff in commercial sex acts, the use of the internet to post sex advertisements, the use of interstate highways to transport Plaintiff to the hotels by their traffickers (and their associates), and other reasons to be proven at trial.

36. As shown above, Defendant had – at minimum – constructive knowledge that each Plaintiff was being trafficked for sex at the property. *See also* Fed. R. Civ. P. 9(b)("knowledge and other conditions of a person's mind may be alleged generally); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1198, 1215 (11th Cir. 2018) (same).

37. Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendant specific and direct knowledge of sex trafficking, including the sex trafficking that victimized Plaintiff, and other crimes at the hotel during the relevant period.

## CAUSATION AND DAMAGES

38.    As a direct and proximate result of Defendant's acts and omissions Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.

39.    Defendant is joint and severally liable with Plaintiff's traffickers, and their associates, and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to Plaintiff.

40.    Defendant is liable for Plaintiff's damages in an amount to be proven at trial, including reasonable attorneys' fees under 18 U.S.C. § 1595(a) and punitive damages.

41.    Plaintiff brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

    a.    Personal injuries;

    b.    Past, present and future pain and suffering;

    c.    Disability;

    d.    Disfigurement;

e. Mental anguish;

f. Loss of the capacity for the enjoyment of life;

g. Loss of earning capacity;

h. Lost wages;

i. Diminished capacity to labor;

j. Incidental expenses;

k. Past, present and future medical expenses;

l. Permanent injuries;

m. Attorney's fees;

n. Punitive damages; and

o. Consequential damages to be proven at trial.

42. Punitive damages should be imposed upon the Defendant without limitation or cap for its actions which are explained more fully above.

43. Defendant is also liable for paying Plaintiff's attorneys fees and litigation expenses pursuant to the TVPRA.

44. Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendant, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiffs.

## STATUTE OF LIMITATIONS

45. Because Plaintiff A.C. was a minor during her trafficking, the statute of limitations under the TVPRA was tolled until A.C. reached her eighteenth birthday, and because A.C. is not yet twenty-eight years old, her claim is still viable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for a judgment against the Defendant and for the following:

1) That process and summons issue requiring each Defendant to appear as provided by law to answer the allegations of the Complaint;

2) Plaintiff be awarded actual damages in amounts to be shown at trial;

3) Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

4) Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

6) Punitive damages be imposed upon each Defendant;

7) Treble damages be imposed upon each Defendant;

8) Plaintiff be provided with a trial by jury; and

9) Plaintiff has such other relief as this Court deems just and appropriate under the circumstances.

This 22nd day of January, 2024.

Matthew B. Stoddard
Ga. Bar No.: 558215
Robert F. Noens
Ga. Bar No.: 193846
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
robert@legalhelpga.com
**Attorneys for Plaintiff**